**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMILY HITZKE, as mother and next friend of Ava Hitzke, a minor, | ) ) ) | |
| | ) | Case No. 20-cv-2894 |
| Plaintiff, | ) ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| VILLAGE OF MUNDELEIN, UNKNOWN VILLAGE OF MUNDELEIN POLICE OFFICER NUMBER 1, and UNKNOWN VILLAGE OF MUNDELEIN POLICE OFFICER NUMBER 2, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emily Hitzke, as mother and next friend of Ava Hitzke, a minor, brings suit against the Village of Mundelein ("Village") and two unknown Village of Mundelein police officers for injuries sustained by Ava when the officers and members of the Mundelein Fire Department attempted to saw through a handcuff that had jammed while attached to Ava's left wrist. For ease of reference, the Court will refer to "Ava" as "Plaintiff" throughout this opinion. Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim [19]. For the reasons stated below, the motion to dismiss is denied. The parties are directed to file no later than March 26, 2021, a joint status report, including (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions or mutual interest in a referral to the Magistrate Judge for a settlement conference.

**I.    Background**

Plaintiff's complaint [1] alleges the following facts, which are assumed to be true for purposes of Defendants' motion to dismiss. Around 11:00 p.m. on June 11, 2019, Plaintiff was socializing with friends at a park in Mundelein, Illinois. Two unknown Mundelein police officers (the "Officers") approached the friends and told them they must leave or would be arrested for trespassing. The Officers discovered that Plaintiff had an outstanding warrant for missing a juvenile court appearance for a misdemeanor battery charge. The Officers placed Plaintiff under arrest, attached handcuffs to her wrists, and transported her to the Mundelein Police Department. When the Officers attempted to remove the cuffs, the left cuff jammed and could not be removed. The Officers took Plaintiff to the garage of the nearby Mundelein Fire Department, where they and members of the Fire Department "attempted to saw off the handcuff utilizing a power saw." [1] at 3. The action of the saw heated the handcuff "to an extreme temperature causing significant and severe burns to the minor Plaintiff's wrist," as well as permanent scarring and disfigurement. *Id*. at 3-4. Based on these facts, Plaintiff brings a federal claim for violation of 42 U.S.C. § 1983 (Count I) and an Illinois state law claim for willful and wanton misconduct (Count II). Currently before the Court is Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.

**II.   Legal Standard**

For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"

*Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

**III.    Analysis**

Plaintiff brings suit against the unknown Officers pursuant to 42 U.S.C. § 1983.[1] "Suits under § 1983 are meant to deter state actors from using the 'color of state law' to deprive individuals of rights guaranteed by the Constitution." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). "Thus, in order to bring a claim under this section, the plaintiff must show two elements: (1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Plaintiff does not identify a specific cause of action against the Officers, which is not required under federal pleading requirements. See *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."). Defendants, assuming Plaintiff intends to bring an excessive force claim, argue that the complaint should be dismissed because: 1) there was a warrant for Plaintiff's arrest, and therefore it was proper for the Officers to place her in handcuffs; 2) Defendants "are unaware of any case suggesting that an emergency extrication of a malfunctioning handcuff with the use of a power saw gives rise to a constitutional claim for excessive force"; and 3) to the extent

---

[1] Plaintiff clarifies in her response brief that she is not pursuing a *Monell* claim against the Village. See [17] at 5.

their actions constituted the use of excessive force, they are nonetheless entitled to qualified immunity.

In response, Plaintiff frames her claim as one for deliberate indifference, rather than excessive force. Plaintiff argues that, as a pretrial detainee, she was "entitled to at least the same protection against deliberate indifference to her basic needs as is available to convicted prisoners under the Eighth Amendment." [17] at 2 (citing *Pain v. Churchich*, 161 F. 3d 1030 (7th Cir. 1998)). According to Plaintiff, the Officers "should obviously have been aware that there was a substantial risk of serious injury to [her] when they and the Mundelein Fire Department decided to take a power saw to her left wrist" and "[i]t is obvious from the allegations in Plaintiff's Complaint that they failed to take appropriate steps to protect her from this known danger." *Id*. Plaintiff argues further that the Officers are not entitled to qualified immunity because "[t]he rule that police officers will be liable under Section 1983 for injuries to a pre-trial detainee if they were deliberately indifferent to a substantial risk of harm has been clearly established prior to the date of Plaintiff's injuries." *Id*. at 5.

For the reasons explained below, the Court concludes that the complaint's allegations are sufficient to state a Section 1983 claim for both deliberate indifference and excessive force and that it would be premature to decide whether the Officers are entitled to qualified immunity.

A.  **Deliberate Indifference**

The Due Process Clause of the Fourteenth Amendment governs pretrial detainees' Section 1983 claims for deliberate indifference. See *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.1997) (explaining that the Eighth Amendment applies to persons who have been convicted, while the Due Process Clause of the Fourteenth Amendment applies to pretrial detainees); see also *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998). "However, courts still look to Eighth

Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Id.* at 665; see also *Payne*, 161 F.3d at 1041 ("A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger."); *Passmore v. Josephson*, 376 F. Supp. 3d 874, 883 (N.D. Ill. 2019).

Plaintiff alleges sufficient facts to support an inference that the Officers were aware that there was a substantial risk she would be seriously injured if they used an electric saw to cut the cuff off her left wrist, but failed to take appropriate steps to protect her. The Officers chose a saw to remove Plaintiff's handcuffs, because they knew or thought it could cut through metal. It is not a great logical leap to infer that they also knew that the saw could cut or burn or otherwise injure someone's skin and body, but disregarded that risk. It cannot be unheard of that handcuffs jam or become stuck, so presumably there must be some way of removing them without causing serious injury. The officers' failure to take any steps to protect Plaintiff from harm is evidenced by the burns and scarring she alleges she suffered as a result. This is enough at the pleadings stage of the case.

### B. Excessive Force

"An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). However, "that right is circumscribed by the Fourth Amendment's insistence on

reasonableness." *Id*. The Seventh Circuit's "cases indicate that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Id.* Stated as a constitutional "right," "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742-43 (7th Cir. 2014); see also *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020); *Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017); cf. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (explaining that the Seventh Circuit has, "on occasion recognized valid excessive force claims based on overly tight handcuffs" (citing *Payne v. Pauley,* 337 F.3d 767, 774–75, 780-81 (7th Cir. 2003); *Herzog v. Village of Winnetka,* 309 F.3d 1041, 1043-44 (7th Cir. 2002); *Lester v. City of Chicago,* 830 F.2d 706, 714 (7th Cir. 1987)). "Of course, whether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of the arrest." *Stainback*, 569 F.3d at 772. "In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself," while "[i]n other cases, it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest." *Id*.

Here, Plaintiff has alleged enough to proceed with an excessive force claim. Her allegations support an argument that the way in which the officers used the cuffs inflicted pain and injury, even though she presented no risk of flight or threat of injury to the Officers. The Officers knowingly and purposely used an electric saw to remove the left cuff, which caused the cuff to become extremely hot and burn and scar Plaintiff. Arguably, the fact that the officers' actions would cause pain was clear from the nature of the act itself—using an electric saw to cut a metal

6

object that was wrapped around Plaintiff's wrist, without anything to protect her skin from potential injury from cuts, burns, or friction. Defendants frame the incident as an emergency, but there is no reason for the Court to presume that an electric saw was the only way Defendants could have approached the problem, or that the injury to Plaintiff was completely accidental. At this early stage of the case, the complaint's allegations are sufficient.

### C. Qualified Immunity

Defendants argue that the Officers are entitled to qualified immunity because: (a) it was not clearly established at the time of Plaintiff's alleged injury that the use of a power saw to remove a malfunctioning handcuff would violate her constitutional rights; and (b) "[w]hile Plaintiff alleges that she sustained a burn injury as a result of the removal process, this does not establish that the officers' request for fire department assistance and their use of a power saw to accomplish the removal was 'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" [13] at 7-8 (quoting *Abbott v. Sangamon County*, 705 F.3d 706, 723-24 (7th Cir. 2013)).

"The qualified immunity doctrine provides defendants immunity from suit, not just a defense to liability." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Though it is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune." *Id.* "When examining a qualified immunity claim, we consider two questions: '(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation.'" *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (quoting *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014)).

7

There are two ways for a plaintiff to show that the law is "clearly established." First, "[t]he law is 'clearly established' when 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'" *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)). The Court looks first to controlling Supreme Court precedent and Seventh Circuit decisions on the issue. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). "If no controlling precedent exists, 'we broaden our survey to include all relevant caselaw in order to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000)).

Second, in some "rare cases" the constitutional violation may be "patently obvious" and the plaintiff may not be required to identify any analogous cases, if he can show that "the defendant's conduct was 'so egregious and unreasonable that … no reasonable [official] could have thought he was acting lawfully.'" *Id.* (quoting *Abbott*, 705 F.3d at 724). "In such cases, the general statement of the right at issue can provide the defendant officer sufficient notice that his actions were illegal." *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018). "Outrageous conduct 'obviously will be unconstitutional.'" *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018) (quoting *Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 377 (2009)). "But even as to action less than an outrage, 'officials can still be on notice that their conduct violates established law ... in novel factual circumstances.'" *Id*. (quoting *Safford Unified Sch. Dist.*, 557 U.S. at 377–78).

"Both methods of inquiry into whether a right is clearly established ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Lovett*, 907 F.3d at 992. When determining whether the law was clearly established, "'the right allegedly violated

must be defined at the appropriate level of specificity.'" *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S.Ct. 1148, 1148 (U.S. 2018). Although there need not be "'a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

The Officers' qualified immunity defense "is determined with reference to the well-pleaded factual allegations in plaintiffs' complaints, which are taken as true and considered in the light most favorable to plaintiffs on a Rule 12(b)(6) motion to dismiss." *Reed*, 906 F.3d at 549. The Seventh Circuit has cautioned that dismissal under Rule 12(b)(6) is not "always (if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020); see also *Baker v. City of Chicago*, 2020 WL 5110377, at *5 (N.D. Ill. Aug. 31, 2020) ("It is rare … for a complaint to be dismissed on qualified immunity grounds under Rule 12(b)(6) because the defense frequently depends heavily on the facts of the particular case, and plaintiffs are not required to anticipate and overcome the qualified immunity defense in their pleadings."). "'[A] complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred." *Jacobs*, 215 F.3d at 765 n.3; see also *Hanson*, 967 F.3d at 589-90.

Here, Plaintiff has alleged facts that, taken in the light most favorable to Plaintiff, plausibly support claims for excessive force and deliberate indifference, both of which are "broad

9

constitutional rights" that were articulated long before Plaintiff's alleged injury ever occurred. *Hanson*, 967 F.3d at 589-90. They also suggest more specific constitutional rights that may have been violated: the right of a pretrial detainee to have appropriate steps taken to protect him from a known danger of substantial risk of serious injury, *Payne*, 161 F.3d at 1041; the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury, *Rooni*, 742 F.3d at 742-43. Whether the Officers ultimately are entitled to immunity will depend on the particular facts—facts that Plaintiff was not required to plead in her complaint to anticipate the Officers' qualified immunity defense. Plaintiff has not, thus far, identified any analogous cases where a detainee was injured as a result of a state actor's attempts to remove a malfunctioning handcuff. But that is not required at this early stage of the case and may not ever be required if Plaintiff—with the benefit of discovery—can make a convincing showing that the Officers' violation of her rights was so "egregious and unreasonable," *Abbott*, 705 F.3d at 724, or so "outrageous," *Reed*, 906 F.3d at 547, that no reasonable officer could have thought he was acting lawfully. Taking the complaint's allegations as true and drawing all inferences in the light most favorable to Plaintiff, it is plausible that Plaintiff will be able to meet this burden.

   Defendants emphasize that this was an emergency and they needed to do something to remove the jammed cuff from Plaintiff's wrist. Obviously, however, that does not justify using any means imaginable to accomplish the task. At some point the attempts to get off the cuffs must be obviously unreasonable. For instance, reasonable minds presumably would agree that it would be outrageous and beyond the bounds of constitutionality to just cut off Plaintiff's hand or one of her fingers to free the cuff. And they might agree that it would be outrageous if the officers had accidentally cut off a hand or finger in their attempt to remove the cuff. Although that may be a

more extreme example than what Plaintiff alleges she suffered, a factfinder would need more details to decide whether this case falls inside or outside the boundaries of constitutionality.

For instance, what kind of saw did the Officers use, and what was its purpose? Did it have any warning labels? Did the Officers follow its instructions for use? Had the Officers or members of the Fire Department ever used a saw to cut off cuffs before? What other options were considered before resorting to a saw? What did Plaintiff, the Officers, and members of the Fire Department say or do before and during the Officers' attempts to remove the cuff? Did anyone say "this is a bad idea," or suggest alternatives or ways of protecting Plaintiff's wrist? Did Plaintiff protest or yell out in pain? All of this would be relevant to evaluating the reasonableness of the Officers' conduct. In sum, there is no way the Court can say based on the limited, yet troubling, factual allegations of the complaint that the unknown Officers are entitled to qualified immunity.[2]

### IV. Conclusion

For these reasons, Defendant's motion to dismiss [19] is denied. The parties are directed to file no later than March 26, 2021, a joint status report, including (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions or mutual interest in a referral to the Magistrate Judge for a settlement conference.

Dated: March 5, 2021

Robert M. Dow, Jr.
United States District Judge

---

[2] Defendants move to dismiss Plaintiff's Illinois state law claim for willful and wanton misconduct solely on the basis that the Court should decline to exercise supplemental jurisdiction. Since Plaintiff has stated a claim for violation of federal law, the Court will maintain jurisdiction over the state law claim, as well.